IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **NICOLE HEBERT** | **CASE NO: 6:20-CV-00622** |
| **VERSUS** | **JUDGE JUNEAU** |
| **REPUBLIC SERVICES ALLIANCE GROUP BFI WASTE SERVICES, L.L.C. and STEVE SYSTMA** | **MAGISTRATE JUDGE HANNA** |

## FIRST AMENDED PETITION ON BEHALF OF NICOLE HEBERT AND JURY DEMAND

NOW COMES PLAINTIFF, Nicole Hebert ("Hebert"), who in response to the orders of this Honorable Court granting leave to amend her original petition, in response to the Magistrate's Report and Recommendation (Doc. 17) and the Judgment of this Court (Doc. 19), concerning Republic Services Alliance Group and BFI Waste Services, L.L.C.'s Motion to Dismiss, and respectfully represents that:

**Declaratory Relief Seeking to Nullify
the Release and Compromise Agreement**

1.

This court agrees that what Republic refers to as a "severance agreement" can be more accurately classified as a release and compromise agreement. (Report and Recommendations, Doc. No. 17; page 7 of 19) This judicially established fact underscores the Plaintiff's allegation that the "agreement" was obtained and the Plaintiff signed it by fraud and duress, rendering it null and void under Louisiana law for lack of consent, for the reasons that follow.

2.

On March 25, 2019, the plaintiff appeared at her workplace for Republic Services Alliance Group et al. ("Republic") as she did any other day over the years of her employment with Republic.

3.

Within minutes of arrival to her usual workplace, Plaintiff was escorted into a conference room along with corporate officials of Republic. While the Plaintiff was expecting her Municipal Manager, she was not expecting an official from Human Resources corporate to be present. Plaintiff believed that they were there to discuss her earlier-filed complaint of harassment and hostile work environment and the resolution of the complaint and arrangements of her employment to cease the harassment and hostile work environment.

4.

At the meeting, Plaintiff was informed by Republic officials from the corporate offices that Republic was "going in another direction" and declared her employment with the company terminated. This news was not expected and came as a surprise to Plaintiff Hebert.

5.

Plaintiff Hebert was then handed a document which she was not given an opportunity to read, and refused to sign. The official from Human Resources generally explained to the Plaintiff what was included in the document. Plaintiff tried to communicate with her husband on her cell phone and was told by the Human Resource official to put her phone down and that "it would only take a few more minutes." Plaintiff Hebert again refused to sign the document.

6.

It was explained to her, still without leaving the document in her hands, that it was merely a "Severance Agreement" providing her with a severance package to provide her with income for the next 6 weeks.

7.

The Plaintiff was not allowed to read the lengthy document where it indicates that she has the opportunity to seek counsel of an attorney regarding the contents of the document. The plaintiff was not allowed to read where the document says that she releases the Defendants from liability for a number of employment related statutes and theories of recovery, i.e. Family Medical Leave Act; Title VII of the Civil Rights Act of 1964; Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; Equal Pay Act of 1963; Employee Retirement Income Security Act of 1974; Americans with Disabilities Act; Fair Credit Reporting Act; Occupational Safety and Health Act; Age Discrimination In Employment Act; Worker Adjustment and Retraining Notification Act.

8.

The Plaintiff was continually urged to sign the document by Republic, encouraging her signature by saying repeatedly that she could reject the terms of the document within days, "like buying a house."

9.

Finally, the Plaintiff was told that she could not obtain her earned wages and commissions if she did not sign the document. Plaintiff is a wife and mother and helps support her family with additional income. On the urging by Republic that the document can be revoked within days of signing, and the fear that she would not receive her wages and commissions and the severance, she signed it. Just before she signed the document, she was told by Republic officials that if she did not sign the document, she could change her mind later and revoke the document at a later date, "like buying a house." By defendants' own admission, Plaintiff was doing a good job and was

assured that a request would be made for her to receive six months severance and that it should not be a problem to get more paid time in her severance package.

10.

It was not until later and after signing the release that she read it and saw that it contained, among many other things, a release and compromise agreement. It also contained a severance package.

11.

Still believing that she could revoke her signature of the document, on March 27, 2019, Plaintiff wrote a letter to Republic revoking the agreement and its terms. Now, Republic urges this court to accept the document as a release and compromise agreement and meeting of the minds between the Plaintiff and Republic, which it is not. (See Doc. No. 6; Motion to Dismiss)

12.

The meeting, the requests and urging for signature, requests for keys and cards, and other property of Republic in possession of the Plaintiff, and removal of her personal belongings from her office and desk lasted a total of 35 minutes, a fact that can be digitally documented by Plaintiff Hebert. Initial reading and then an understanding of the lengthy document by anyone takes more than thirty five minutes.

13.

For months before the termination of her employment, Plaintiff was subjected to sexual harassment, general harassment, retaliation and hostile work environment all under the management of Steve Sytsma, who made lascivious and suggestive remarks to her, showed her pictures of his naked wife, physically intimidated her, and routinely used the "f word" and the "p word" in the office and at client promotions. When Plaintiff complained to central management

and human resources, little was done and Plaintiff began to experience declining health, at one time being fitted with a heart monitor by her doctor, all because of the stress at work. By the time of the termination and presentation of the "severance agreement," as it was referred by Republic, now called a release and compromise, Plaintiff was not in the right mind or health to know what she was signing.

14.

Plaintiff feared unjust damage to her reputation, health, well-being, and property by depriving her of earned wages and commissions as Republic threatened at the termination meeting.

15.

Plaintiff specifically repudiates and revokes her signature on the release and compromise agreement as obtained by fraud and duress.

16.

For these reasons and others, the Plaintiff seeks to nullify by order of this Court the release and compromise agreement by specifically pleading fraud and duress committed by Republic.

**Breach of Contract**

17.

In the course of Plaintiff Hebert's employment with Republic, she was consistently awarded commissions on contracts landed with various public entities with each and every contract event as was customary for her employment with Republic.

18.

Plaintiff was able to repair a $75 million contract with the Lafayette Consolidated Government and secure a $5 million contract with the City of Jennings, Louisiana for Republic just before her termination. Plaintiff was threatened that she could not get those commissions

without signing the agreement placed before her at termination. Those remain unpaid and unaccounted.

19.

Plaintiff has demanded an accounting of how her commissions were calculated, and payment of the commissions. Republic has refused this demand by neither paying the commissions nor showing how they are calculated.

20.

There is no written contract of employment nor commissions and because Republic incentivized her landing contracts with various public entities with each and every contract, this became a custom and consistent practice sufficient to constitute a binding contract between the Plaintiff and Republic, sufficient to render it actionable under these circumstances as an implied contract, and to trigger a breach of contract claim for unpaid landed contracts just before her termination.

20.

Republic failed to account for and pay her commissions on these contracts (Lafayette Consolidated Government and City of Jennings). Plaintiff Hebert specifically alleges that Republic breached the implied contract by not paying her the commissions and refusing to account for them.

21.

Plaintiff never failed to receive commissions on landed contracts with public entities, until she was abruptly terminated by the defendants. Republic breached an implied contract with Plaintiff Hebert.

22.

Plaintiff earned commissions for contracts with the following public entities: Lafayette Consolidated Government, City of Jennings, and others.

23.

Republic failed to account for and pay her commissions on these contracts (Lafayette Consolidated Government and City of Jennings). Plaintiff Hebert specifically alleges that Republic breached the implied contract by not paying her the commissions and refusing to account for them.

### Claim Under Louisiana Wage Payment Statute

24.

After signing the "release" under duress and fraud, Plaintiff Hebert received a single check from Republic containing both her severance payment and her earned wages.

25.

Plaintiff has not cashed this check based on her revocation and repudiation of the "agreement" and the fact that the check with the combined amount (earned wages and severance) is a trick and artifice to underscore and confirm her acceptance of the release agreement.

26.

By not cashing the check containing both sums, and sending a letter of revocation, the Plaintiff refuses to fall for the trick and artifice to avoid Republic's claim that she confirmed the severance agreement by cashing the check and keeping the funds.

27.

The check also contains, by Republic's judicial admission in its pleadings in this case, an amount of earned wages, which to this day (16 months later and having to hire an attorney) remains

unpaid. Republic admits this as an uncontroverted fact in this case, which constitutes a judicial admission.

28.

By doing so, and through trick and artifice, Republic has violated the Louisiana Wage Payment Statute La. R.S. 23:631(A)(1). Contrary to the statute, Republic has failed these 16 months later to pay the undisputed amount due. Failure to comply with the statute subjects the employer to penalties. La. R.S. 23:632 and attorney's fees.

29.

It is clear by their admission that 1) the wages are due and owing; 2) demand for payment was made at the place where the employee is usually paid, and 3) the employer failed to pay upon demand. These facts are now established in the case under La. R.S. 23:631.

30.

The plaintiff made a verbal demand on March 25, 2019, for payment of wages and reimbursable expenses, and a written demand on March 28, 2019, which to date, remain unpaid.

31.

On April 2, 2019, after having to seek the counsel of an attorney, Plaintiff made a written demand for Republic to separate the severance payments from the payment of earned wages and reimbursable expenses.

32.

Plaintiff made a third demand on June 14, 2019, requesting separation and stating her intent to file suit under the Louisiana Wage Payment Statute and other theories of recovery.

33.

Republic admits it issued a check on April 4, 2019, in the amount of $3,495.04, which, according to Republic's judicial admission, combined the monthly prorated severance amount (repudiated) and her regular wages.

34.

Republic purposefully combined the wages owed with the severance pay so that if she cashed the check, she could be deemed to have accepted the terms of the severance agreement. Republic underscores its fraud and duress over the release agreement by seeking to confirm it later with a combined check for wages and severance. This demonstrates that Republic is aware that its practices for fraud and duress with Plaintiff Hebert are legally questionable, at best.

35.

On the advice of counsel, Plaintiff has not cashed the check for reasons stated. Under the statute, Plaintiff Hebert is entitled to the amount of her unpaid wages and attorney's fees, which are specifically claimed at this time.

**Defamation**

36.

An employee hired by Republic after Ms. Hebert reported the harassment and hostile work environment, and who has since left Republic Services on his own, Boris Woods, Maintenance Manager at Republic, expressed to Ms. Hebert things that Steve Sytsma told him about Ms. Hebert. This former employee said it was very clear that Steve Sytsma hated Ms. Hebert. This former employee also heard Steve Sytsma say that he was unhappy about Ms. Hebert reporting to

corporate that he had sexually harassed her and filed a complaint against him, and instructed Mr. Woods to stay away from Ms. Hebert.

37.

Ms. Hebert has evidence that, following her termination by Republic Services, the managers of the company violated their own company policy and Louisiana law by disparaging her and her reputation to other prominent people in the community and close to the area in which she works, providing Ms. Hebert with claims against Republic Services for, among other things, breach of confidentiality, disparagement, and libel/slander. Mark Dubroc, Lafayette Consolidated Government Public Works Director, reported that Steve Sytsma called him the morning of her termination "that he had to fire you." This information was also disseminated to Republic employees Bess Foret and Russell Bourque.

### Claims against Steve Sytsma

38.

Steve Sytsma told several female employees to "go grab it by the pussy" as a form of perverse encouragement toward job duties at Republic.

39.

Ms. Hebert has evidence that, following her termination by Republic Services, the managers of the company violated their own company policy and Louisiana law by disparaging her and her reputation to other prominent people in the community and close to the area in which she works, providing Ms. Hebert with claims against Republic Services for, among other things, breach of confidentiality, disparagement, and libel/slander.

40.

Ms. Hebert attended a work-related dinner with a local mayor where Steve Sytsma used the word "pussy" no less than ten times. As the only female at the table, Ms. Hebert was very uncomfortable and embarrassed, in addition to being concerned about her professional reputation.

41.

On more than one occasion Steve Sytsma was visibly intoxicated in public with customers and potential customers, drawing unnecessary and unwanted attention, embarrassing the company, and the employees present. These incidents not only made Ms. Hebert and other Republic Services employees present uncomfortable but also made customers and potential customers uncomfortable.

42.

On one occasion in the office, Steve Sytsma commented on Ms. Hebert's dress, stating that he could see inside the dress.

43.

Steve Sytsma was constantly in the hall at the office loudly saying "fuck" and many other vulgar words and phrases. He also constantly disparaged and mocked senior-level executives (much of his disparaging/mocking comments were focused on the current President), area executives, and even local employees.

44.

Ms. Hebert was moved at the instruction of Steve Sytsma to a small space in the office that was usually used for storage. This office was not properly set up with connections for desk phones, computers, and the necessary equipment needed to perform her duties. Plaintiff was required to

move all of the contents of her office on her own. Later, for reasons unknown, she was instructed to move into another office, again, no help was offered and Plaintiff had to piece together office furniture in order to be adequately set up to perform her duties.

45.

Steve Sytsma told Ms. Hebert that she was not allowed to close her office door. He would sarcastically say that it was an "open door policy" and further told her the only time her door was allowed to be closed was if he closed it. No one else, including Steve Sytsma, kept their office doors open at all times.

46.

On August 27, 2018, Ms. Hebert made a phone call to Larson Richardson, her former Municipal Manager at Republic Services and Steve Sytsma's boss, because of the severity of the sexual harassment, bullying, and unprofessional conduct of Steve Sytsma, including the unprofessional language he was using inside Republic Services and in the company of customers and potential customers. The hostile work environment was affecting Ms. Hebert's health.

47.

Nicole Hebert sought medical attention for stress-related illness and had to wear a heart monitor for two weeks and had to begin physical therapy to help with frequently occurring migraines due to the stress induced by the conduct of Steve Sytsma.

48.

It was reported to Larson Richardson to David Huntt that if anyone at Republic Services worked well with Ms. Hebert, then Steve Sytsma figuratively placed a target on you. Employees were very aware of Steve Sytsma's feelings towards Ms. Hebert and because of this, many would have little interaction with her in the office while Steve Sytsma was present.

49.

Steve Sytsma used posturing to physically intimidate Ms. Hebert shortly after he learned that she had made a complaint against him. This intimidation was witnessed by other managers.

50.

Steve Sytsma required Ms. Hebert to do work that was not typical of other Municipal Managers.  It was clear to others involved in these conversations that Steve Sytsma was giving this work to Ms. Hebert as a punishment and retaliation, and to tie her to the office, preventing her from doing the job she was hired to do.

51.

Steve Sytsma requiring Plaintiff Hebert to do tasks that no other manager in the Lafayette business unit was required to do.   These requests were all contradictory to the resolutions that area HR/Management gave Ms. Hebert at the conclusion of their harassment investigation.  Ms. Hebert made attempts to talk to area HR/Management about this and did not receive returned phone calls. These calls are digitally documented.

52.

Ms. Hebert made a request to the new local HR representative, Adrienne Alexander, to be present for any meetings between Ms. Hebert and Steve Sytsma involving her job.  This request was agreed to but was not fulfilled at the direction of Steve Sytsma.

53.

During the last closed-door conversation between Steve Sytsma and Ms. Hebert on February 20, 2019, Steve Sytsma asked Ms. Hebert why she was so nervous around him three different times.  He pointed out that she was visibly nervous and one time he stated, "you don't have to be nervous around me, I'm not the devil." Despite Ms. Hebert's request that Adrienne

Alexander be present during meetings between Steve Sytsma and Ms. Hebert, Adrienne Alexander was aware of this meeting but did not attend at the direction of Steve Sytsma.

54.

For a long period of time, Steve Sytsma targeted Nicole Hebert and those who aligned with her.

55.

Republic corporate repeatedly heard complaints from Nicole Hebert and other female managers and employees but did not do anything to correct the conduct or stem the aggressive behavior toward her. At one time the behavior was so systematic and consistent as to conclude that the behavior of Steve Sytsma was at the behest of Republic corporate officials.

56.

Nicole Hebert seeks damages against Steve Sytsma for inducing stress-related physical and other health problems requiring medical attention and therapy.

57.

Nicole Hebert seeks damages against Republic for knowingly and willfully allowing and/or encouraging the outrageous behavior directed at her by the company.

58.

Plaintiff Hebert reurges and reiterates all allegations and claims in her original petition as if copied herein in extenso.

**Jury Demand**

59.

Plaintiff demands a trial by jury on all issues.

WHEREFORE, all premises considered, Plaintiff Nicole Hebert prays for the following relief:

1. Declaration that the agreement is null and void;

2. An award of wages, penalties and attorney's fees in accordance with the Louisiana Wage Payment Statute at La. R.S. 23:632;

3. A declaration of breach of implied contract and an award of commissions on contracts, with accounting, obtained for and on behalf of Republic;

4. An award for defamation of character of Plaintiff Hebert;

5. An award for damages based on intentional infliction of mental distress;

6. And all other general and equitable relief awardable under law.

Respectfully Submitted,

**ONEBANE LAW FIRM**

/s/ Gregory K. Moroux, Sr.
Gregory K. Moroux, Sr., Bar Roll No. 9723
E-mail: morouxg@onebane.com
1200 Camellia Boulevard, Suite 300 (70508)
P.O. Box 3507
Lafayette, LA 70502
Telephone: 337-237-2660
Facsimile: 337-266-1232

ATTORNEYS FOR PLAINTIFF, NICOLE HEBERT